**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRISTOPHER ZIMMER, SR.** and **NICOLE ZIMMER**,          Plaintiffs, <br><br> v. <br><br> **THE NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY**, **LISA VON PIER**, in her official capacity as the Director of the New Jersey Division of Child Protection and Permanency and the Assistant Commissioner of the New Jersey Department of Children and Families, **ALLISON BLAKE**, in her official capacity as the Commissioner of the New Jersey Department of Children and Families, **MONIQUE DYKES**, in her individual capacity, and **MICHELLE MARCHESE**, in her individual capacity, <br><br> Defendants. | Civ. Action No.: 15-2524 (FLW)(DEA) <br><br> **OPINION** |

**WOLFSON, United States District Judge:**

Plaintiffs Christopher Zimmer, Sr. and Nicole Zimmer, husband and wife, (collectively, "Plaintiffs") bring this suit against Defendants, the New Jersey Division of Child Protection and Permanency (the "DCPP"), Lisa Von Pier, in her official capacity as Director of the DCPP and Assistant Commissioner of the New Jersey Department of Children and Families (the "DCF"),[1]

---

[1] The DCPP, formerly known as the Division of Youth and Family Services ("DYFS"), is New Jersey's child protection and child welfare agency within the DCF. Compl. ¶ 3.

1

Allison Blake, in her official capacity as Commissioner of the DCF, Monique Dykes, in her individual capacity, and Michelle Marchese, in her individual capacity (collectively, "Defendants"), alleging that Plaintiffs' constitutional rights were violated when Ms. Marchese conducted an investigation of them and the homeschooling of their son, C.Z., at their home, during the course of her work as a caseworker for the DCPP. Defendants move to dismiss the majority of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) based on Eleventh Amendment sovereign immunity and lack of Article III standing, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiffs oppose the motion.

For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part. All claims for both damages and injunctive relief against the DCPP, Ms. Von Pier, and Ms. Blake are barred by Eleventh Amendment sovereign immunity and dismissed for lack of subject matter jurisdiction. All other claims are dismissed for failure to state a claim, except the Fourth Amendment claims against Ms. Marchese in Counts Four and Six.

## I.    Background

The following allegations are taken from Plaintiffs' Complaint and are assumed as true for the purposes of review under Rule 12(b)(6). On January 13, 2015, Ms. Marchese appeared at the front door of Plaintiffs' home, without prior notice to Plaintiffs, and introduced herself to Mr. Zimmer, Sr. as a caseworker with the DCPP.[2] Compl. ¶¶ 19, 21, 22. Plaintiffs allege that Ms. Marchese insisted "that she categorically had to come into the Zimmer family home 'Now!'" Compl. ¶ 22. When asked by Mr. Zimmer, Sr. why she had authority to enter Plaintiffs' home, Ms. Marchese responded that the DCPP had received information from an undisclosed source that C.Z.

_____

[2] Plaintiffs allege that Ms. Marchese was directly supervised by Ms. Dykes. Compl. ¶ 20.

"was not getting the 'proper homeschooling,'" and she needed to investigate whether C.Z.'s homeschooling complied with local standards. Compl. ¶¶ 23-24. When Mr. Zimmer, Sr. refused Ms. Marchese entry into Plaintiffs' home, Ms. Marchese insisted that "he had to let her in 'right now' and he 'could not refuse' her entry." Compl. ¶¶ 26-27. Mr. Zimmer, Sr. again refused to let her enter the home, and instead asked her to wait in her car while he contacted local police. Compl. ¶ 28. After the police arrived and "failed to remove" Ms. Marchese, Plaintiffs allowed her into their home, allegedly against their will and under duress. Compl. ¶ 30.

Once inside, Ms. Marchese explained that her investigation was classified as less severe, or second tier, because she was only there to assess C.Z.'s homeschooling, not an immediate threat of abuse or neglect of C.Z. Compl. ¶¶ 32-35, 37. Ms. Marchese then asked Plaintiffs a number of questions regarding C.Z.'s homeschooling, including whether Plaintiffs had written records of his homeschooling and their weekly teaching schedule. Compl. ¶¶ 38-41, 46-49, 64. Ms. Marchese also asked C.Z. a number of questions related to his homeschooling, including whether he had ever told anyone that he does not do schoolwork. Compl. ¶¶ 46, 51-52, 64, 71. Mr. Zimmer, Sr. instructed C.Z. not to answer some of these questions. Compl. ¶¶ 47, 62, 66. Mr. Zimmer, Sr. objected that Ms. Marchese "had no legal right to involuntarily question them in their home about their homeschooling of [C.Z.]," but Ms. Marchese "asserted that she had such a legal right, without citing any legal authority." Compl. ¶ 49.

Ms. Marchese then asked Plaintiffs if C.Z.'s vaccinations were up to date and "demanded that Plaintiffs sign HIPPA (Health Insurance Portability and Accountability Act) Medical Release forms so that the [DCPP] would have full access to [C.Z.'s] medical records" and "provide the last four digits of their Social Security Numbers so that [the DCPP] could perform a background

investigation on [Plaintiffs]." Compl. ¶¶ 73-74. Plaintiffs signed the forms and provided their social security numbers. Compl. ¶ 75.

Ms. Marchese then asked C.Z. whether there was any domestic violence, alcohol abuse, or illegal drug abuse in the home. Compl. ¶¶ 77-81. C.Z. answered that there was not. Compl. ¶¶ 77-81. When Ms. Marchese next asked whether Plaintiffs had any weapons in the home, Mr. Zimmer, Sr. indicated that the Plaintiffs "lawfully possessed firearms," which were "secure in a gun safe," to which only he had the keys. Compl. ¶¶ 82- 87. Ms. Marchese then "demanded to see the firearms and where [C.Z.] sleeps." Compl. ¶ 88. Mr. Zimmer, Sr. showed Ms. Marchese to the room where the firearms were stored, where she attempted to open the safe and verified that it was locked. Compl. ¶¶ 88-91. Ms. Marchese then "instructed" Mr. Zimmer, Sr. to "pull out a gun and show it to her so she could see it better." Compl. ¶¶ 92-93. Mr. Zimmer, Sr. complied. Compl. ¶¶ 92-93. When Ms. Marchese asked if the ammunition was kept separate from the firearms, Mr. Zimmer, Sr. pointed to an empty ammunition can next to the gun safe where ammunition was stored separately. Compl. ¶ 94. Ms. Marchese asked Mr. Zimmer, Sr. if C.Z. ever appeared to be suicidal, to which Mr. Zimmer, Sr. answered no. Compl. ¶ 96. Ms. Marchese next viewed C.Z.'s bedroom, and after "observing everything in plain view" and checking behind the bathroom door, she departed from the residence. Compl. ¶¶ 97-98. On her way out, Ms. Marchese mentioned to Plaintiffs that she would get back to them with information regarding the current homeschooling laws, and that she might be able to help them adjust their homeschooling routine. Compl. ¶ 98.

At some point thereafter, Plaintiffs retained an attorney and revoked their HIPPA releases. Compl. ¶¶ 99-100. On January 30, 2015, Plaintiffs' counsel faxed a "cease and desist" letter to the Warren County DCPP office to Ms. Marchese's attention, demanding that the DCPP end all direct communications with Plaintiffs and their health care providers and that the DCPP refrain from

further violating Plaintiffs' constitutional rights. Compl. ¶¶ 101-2. This letter also demanded that the DCPP "immediately produce any and all allegations, notes and/or records which it may have with respect to any investigation of the Zimmer family," that the DCPP "destroy any medical information regarding the Zimmer family which may have been obtained by way of [the] medical releases," and that the DCPP "produce the purported legal authority under which [it] conducted its search and interrogation of the [Plaintiffs]." Compl. ¶¶ 103-4.

On March 9, 2015, the DCPP sent a letter to the Plaintiffs, signed by Ms. Marchese and Ms. Dykes, stating that:

> We were unable to complete our assessment as it pertains to a referral made to our agency on 1/07/15, as you were unwilling to cooperate with the CWS referral process. Therefore, [the DCPP] will not be providing services to your child and your family at this time. If you need any additional services, please contact the State Central Registry 24-hour service number at [redacted phone number]. Thank you for your cooperation during our recent contacts.

Compl. ¶ 105. Plaintiffs allege that the DCPP's March 9 letter was an attempt to mischaracterize Ms. Marchese's investigation as an offer of beneficial services to Plaintiffs, rather than an investigation into whether C.Z.'s homeschooling satisfied regulatory standards. Compl. ¶ 109. To date, the DCPP has allegedly not responded to the demands in Plaintiffs' January 30, 2015 letter. Compl. ¶ 106-7.

On April 9, 2015, Plaintiffs filed a six-count complaint in this Court against Defendants. Compl. ¶¶ 3-7, 118-57. In Count One, Plaintiffs bring claims under 42 U.S.C.A. § 1983 ("Section 1983") against the DCPP, Ms. Von Pier, and Ms. Blake for allegedly violating Plaintiffs' Fifth and Fourteenth Amendment rights by 1) failing to promulgate adequate rules and regulations for child protective service workers under their command regarding the avoidance of threats and abuse of process in the investigation of allegations of child abuse; 2) failing to instruct, discipline, and train

service workers in the appropriate methods to investigate allegations of child abuse, without resorting to threats and abuse of process; and 3) tacitly authorizing or explicitly instituting, with deliberate indifference, a policy, allowing these service workers to commit abuse of process. Compl. ¶¶ 118-25. Plaintiffs allege that these actions constitute cruel and unusual punishment, as well as deprivation of life and liberty. Compl. ¶ 125.

In Count Two, Plaintiffs bring claims under 42 U.S.C.A. § 1985 ("Section 1985") against all Defendants, for allegedly conspiring to tolerate incidents of abuse of process by DCPP service workers, notwithstanding the constitutional implications of such abuse and the likelihood that such conduct would be repeated. Compl. ¶¶ 126-29.

In Count Three, Plaintiffs bring claims under Section 1983 against Defendants alleging that "[t]he acts and/or omission of [Defendants] in this case were performed under color of law and deprived Plaintiffs of their First, Second, Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution to due process, compulsory process, equal protection, and freedom from interference with their fundamental rights as parents without due process of law." Compl. ¶ 131. Plaintiffs allege that these actions and/or omissions constitute cruel and unusual punishment, as well as deprivation of life and liberty. Compl. ¶ 136. In Count Four, Plaintiffs also bring claims under Section 1983 against Defendants for allegedly depriving Plaintiffs of their First, Second, Fourth, Fifth, and Fourteenth Amendment rights, as well as their rights to be free from excessive interference with family relationships and to due process. Compl. ¶¶ 137-45. In Count Five, Plaintiffs bring claims under Section 1983 against Defendants for allegedly willfully, knowingly, and purposely retaliating against Plaintiffs for exercising their First, Second, and Fourteenth Amendment rights to maintain family relationships, educate their child, and possess firearms. Compl. ¶¶ 146-54.

Finally, in Count Six, Plaintiffs bring claims under the New Jersey Civil Rights Act (the "NJCRA"), N.J.S.A. 10:6-2, against Defendants for allegedly depriving Plaintiffs of "substantive due process, equal protection rights, privileges and/or immunities secured by the Constitution and/or laws of the United States . . . and the laws of the State of New Jersey." Compl. ¶¶ 155-57.

Plaintiffs request the following relief: 1) an injunction requiring the DCPP, Ms. Von Pier, and Ms. Blake to create an explicit policy requiring DCPP employees to refrain from abuse of process; 2) that Defendants pay Plaintiffs $10,000,000 in damages for the injuries they have suffered; 3) that Defendants pay $50,000,000 in punitive damages; 4) that Defendants pay Plaintiffs' attorneys' fees and costs; and 5) that Defendants pay Plaintiffs for their pain and suffering. Compl. ¶¶ 118-169.

Defendants concede, for the purposes of this motion only, that Plaintiffs' Complaint states a claim in Count Four against Ms. Marchese for unreasonable search in violation of Plaintiffs' Fourth Amendment rights. Br. in Supp. of Mot. to Dismiss in Lieu of Answer Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on Behalf of Defs. ("Defs.' Supp. Br.") 21 n 7. Defendants move to dismiss all other claims under Fed. R. Civ. P. 12(b)(1), based on Eleventh Amendment sovereign immunity and lack of Article III standing, as well as under Fed. R. Civ. P. 12(b)(6), for failure to state a claim. Plaintiffs oppose the motion.

## II.    Standard of Review

### a.  Motion to Dismiss Pursuant to Rule 12(b)(1)

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n 2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts

7

of subject matter jurisdiction.") (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Typically, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. Pennsylvania Turnpike Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *see also Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999); *Maliandi v. Montclair State Univ.*, Civ. No. 14-01398, 2014 WL 3778259, at *1 (D.N.J. July 31, 2014).

In evaluating a Rule 12(b)(1) motion to dismiss, the court must determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *id.* at 891). However, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.* at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)). Here, the motion before the Court involves a factual attack to subject matter jurisdiction, because the parties primarily dispute whether the DCPP qualifies for sovereign immunity as an arm of the state. *See Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 546 (3d Cir. 2007) (Determining whether an agency is entitled to Eleventh Amendment immunity can be "a fact-intensive review that calls for individualized determinations."). Therefore, on reviewing

8

this question of sovereign immunity, it is appropriate for the Court to examine evidence outside the pleadings, if necessary.

   b.  *Motion to Dismiss Pursuant to Rule 12(b)(6)*

   Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citations and quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

   However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citations and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the

9

facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 2016 U.S. App. LEXIS 366, at *10 (3d Cir. Jan. 11, 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citations and quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at *10-11 (citations, quotations, and brackets omitted).

## III.   Analysis

### a.   *Eleventh Amendment Immunity*

Defendants contend that Eleventh Amendment immunity bars Plaintiffs' claims against the DCPP, Ms. Von Pier, and Ms. Blake.

#### i.   <u>Immunity of the DCPP</u>

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The amendment affords states and state agencies immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought. *Pennhurst,* 465 U.S. at 100-01; *see also Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the

U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought. . . .").

Eleventh Amendment immunity from suit also extends to agencies, departments, and officials of the state when the state is the real party in interest. *Alabama v. Pugh*, 438 U.S. 781, 781 (1978); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d. Cir. 2002); *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001). In *Fitchik v. New Jersey Transit Rail Operations, Inc.*, the Third Circuit determined that the state is a party in interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." 873 F.2d 655, 659 (3d. Cir. 1989). In short, sovereign immunity is appropriate if the named defendant is an "arm of the state." *Davis v. Lakewood*, No. 03-1025, 2005 WL 1863665, at *3 (D.N.J. Aug.4, 2005) (citing *Chisolm*, 275 F.3d at 323).

The *Fitchik* court also set forth a three factor test to determine whether a defendant is indeed an "arm of the state" entitled to sovereign immunity, which analyzes: "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." 873 F.2d at 659; *see also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 948 F.Supp. 400, 409 (D.N.J. 1996) (precluding suit where "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration" (citations and quotations omitted)). In applying this three-factor test, the Third Circuit noted that not all three factors are to be given equal weight; rather, the first inquiry, whether any judgment would be paid from the state treasury, is the most important question, and generally proves dispositive. *Fitchik*, 873 F.2d at 659; *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006); *Lakewood*, 2005 WL 1863665, at *3.

11

Courts in this district, as well as the Third Circuit, have long held that the DCPP, formerly known as DYFS, is an arm of the state for sovereign immunity purposes. *Howard v. N.J. Div. of Youth & Family Servs.,* 398 F. App'x 807, 811-12 (3d Cir. 2010) ("DYFS is immune from suit under the Eleventh Amendment"); *Mammaro v. The New Jersey Div. of Child Permanency & Prot.*, Civ. No. 13-6483, 2015 WL 225999, at *4 (D.N.J. Jan. 16, 2015) ("courts in this state have long held that DYFS is, 'beyond dispute,' an arm of the state for sovereign immunity purposes" (quoting *Sweet-Springs v. Dept. of Children and Families*, Civ. No. 12-706, 2013 WL 3043644, at *5 (D.N.J. June 17, 2013))); *Newson v. Dep't of Children & Families Div. of Child Prot. & Permanency*, Civ. No. 14-5708, 2014 WL 5025924, at *4 (D.N.J. Oct. 8, 2014); *Simmerman v. Corino*, 804 F. Supp. 644, 650 (D.N.J. 1992), *aff'd*, 16 F.3d 405 (3d Cir. 1993).

Plaintiffs do not acknowledge this established body of case law, but rather cite three cases to support an argument that the DCPP is not an arm of the state: (1) *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 50 (1994), in which the Supreme Court found that the Port Authority Trans-Hudson Corporation, a wholly owned subsidiary of the Port Authority of New York and New Jersey, was not entitled to sovereign immunity; (2) *Fitchik*, 873 F.2d at 662, in which the Third Circuit found that New Jersey Transit Rail Operations ("NJTRO"), a wholly-owned subsidiary of New Jersey Transit ("NJT"), was not entitled to sovereign immunity; and (3) *Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n*, 598 F.2d 1303, 1307 (3d Cir.1979), in which the Third Circuit found that a lawsuit against the New Jersey Cemetery Board could proceed because New Jersey was not a real party in interest. In all three cases, the courts determined that defendant entities were not entitled to sovereign immunity because they were financially independent such that any judgment against the entities would not be satisfied from the state treasuries. *Hess*, 513 U.S. at 50; *Fitchik*, 873 F.2d at 662; *Ramada*, 598 F.2d at 1307.

Here, however, the Plaintiffs have offered no evidence that the State of New Jersey is a minority contributor to DCPP's budget or that Plaintiffs' asserted relief -- totaling $60 million in compensatory and punitive damages, plus attorneys' fees -- will not impact the state treasury. Indeed, Plaintiffs rely entirely on statements in their brief, unsupported by any evidence, that the DCPP "has funding independent of the State Treasury . . . particularly in the form of direct funding from the federal government by way of the United States Department of Health & Human Services" and that the DCPP "often obtains monies from the parents it brings actions against as 'child support', but there is no accounting of these funds." Br. of the Pls.in Opp'n to Fed.R.Civ.Pro. 12(b)(1) and 12(b)(6) Mot. of Defs. To Dismiss the Pls.' Compl. ("Pls. Opp'n Br.") 18-19. To the contrary, New Jersey statutes indicate that as a division of the DCF, a "principal department" of the executive branch of the state government, N.J.S.A. § 9:3A-3, the DCPP is funded by the state treasury. *See e.g.*, N.J.S.A. § 52:9H-3 ("all needs for the support of the State Government and for all other State purposes shall be provided for in one general appropriation law"); N.J.S.A. § 52:18A-42 ("the State Treasurer, with the approval of the Governor, may make transfers of appropriations, in whole or in part, available and to become available to any department, officer or agency affected by the provisions of this act.").

There is no evidence for this Court to find that a judgment against the DCPP would not be satisfied from the New Jersey state treasury, which would contravene precedents of the Third Circuit and other courts in this district. Moreover, the remaining two *Fitchik* factors, the status of the entity under state law and the degree of autonomy enjoyed by the entity, clearly weigh in favor of finding that the DCPP is an arm of the state. *See Simmerman*, 804 F.Supp. at 650. Therefore, the DCPP is entitled to Eleventh Amendment immunity.

Next, there are three narrowly circumscribed exceptions that have been established to limit the breadth of the Eleventh Amendment: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001). Plaintiffs have not argued that any of these exceptions to sovereign immunity apply to the DCPP, nor could they. Indeed, Congress has not abrogated, and New Jersey has not waived, the state's sovereign immunity with respect to Section 1983 claims or Section 1985 claims.[3] *Quern v. Jordan*, 440 U.S. 332, 338 (1979); *Mierzwa v. United States*, 282 F. App'x 973, 976 (3d Cir. 2008) (New Jersey has not waived its Eleventh Amendment immunity with respect to Section 1983 claims in federal court) (citations omitted); *Garcia v. Richard Stockton Coll. of New Jersey*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002); *see also Shine v. Merenda,* 586 F. App'x 95, 98 (3d Cir. 2014) (affirming dismissal of Section 1985 claim as barred by sovereign immunity); *Hurst v. City of Rehoboth Beach*, 288 F. App'x 20, 24-25 (3d Cir.2008) (citing *Pennhurst*, 465 U.S. at 98; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Quern*, 440 U.S. at 345). Likewise, there has been no congressional

---

[3] The Court notes, additionally, that the DCPP is not considered a "person" under the meaning of Section 1985. Indeed, states and state agencies "are not 'persons' within the meaning of § 1983 and, therefore, cannot be among those held liable for violations of the civil rights statute." *Blanciak*, 77 F.3d at 697 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989)). And, although the Third Circuit has "never explicitly decided whether the term 'person' has the same meaning under §§ 1983 and 1985 . . . [n]evertheless, the district courts in [the Third] Circuit have consistently answered that question in the affirmative." *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 854 n 3 (3d Cir. 2014) (citing *Carabello v. Beard*, 468 F.Supp.2d 720, 723 n. 2 (E.D.Pa. 2006*); Wright v. Phila. Hous. Auth.*, Civ. No. 94-1601, 1994 WL 597716, at *2-3 (E.D.Pa. 1994); *Rode v. Dellarciprete*, 617 F.Supp. 721, 723 n. 2 (M.D.Pa. 1985)). Because Plaintiffs do not argue that the term "person" has a different meaning under Section 1985 than under Section 1983, like the Third Circuit in *Lagano*, I see no reason why I should not conclude that like Section 1983, states and state agencies cannot be held liable for violations of Section 1985. *See* 769 F.3d at 854 n 3.

abrogation or waiver by New Jersey of state sovereign immunity with respect to NJCRA claims brought in federal court.[4] *Balsam v. Sec'y of New Jersey*, 607 F. App'x 177, 183 (3d Cir.) *cert. denied sub nom. Balsam v. Guadagno*, 136 S. Ct. 189 (2015); *see also Bayete v. Ricci*, 489 F. App'x 540, 542 (3d Cir. 2012). Indeed, the NJCRA provides that "[a]n action brought pursuant to this subsection may be filed in Superior Court," rather than federal court. N.J.S.A. 10:6-2(d). For these reasons, the Court finds that all of Plaintiffs' claims against the DCPP are barred by Eleventh Amendment sovereign immunity and consequently this Court lacks subject matter jurisdiction over these claims.

      ii.    <u>Immunity of Ms. Von Pier and Ms. Blake</u>

Next, the Court turns to whether Ms. Von Pier and Ms. Blake also enjoy sovereign immunity as state officials sued in their official capacities. Suits against state officials in their official capacities are barred by the Eleventh Amendment, absent specific abrogation of the state's immunity by Congress or consent by the state, "because it is merely another way of pleading an action against the state." *Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014); *see also Will*, 491 U.S. at 66, 70-71. However, in *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court created a limited exception to Eleventh Amendment sovereign immunity, in which state officers can be sued for prospective injunctive relief to end ongoing violations of federal law. *Christ the*

---

[4] Moreover, because the NJCRA was modeled after Section 1983, states and state agencies should not be considered "persons" under the NJCRA, and therefore cannot be liable under this statute. *See, e.g.*, *Didiano v. Balicki*, Civ. No.10-4483, 2011 WL 1466131, at *8 (D.N.J. Apr. 18, 2011) *aff'd*, 488 F. App'x 634 (3d Cir. 2012) (holding that "person" has the same meaning under both Section 1983 and NJCRA); *see also Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983." (quoting *Chapman v. N.J.*, Civ. No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009))).

*King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 318 (3d Cir. 2013). "The theory behind *Young* is that a state officer lacks the authority to enforce an unconstitutional state enactment, and thus the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct."[5] *Id.* at 318 (citations and quotations omitted).

Plaintiffs appear to argue that the *Young* exception applies here, because they seek to enjoin Ms. Von Pier and Ms. Blake from "repeatedly violat[ing] the Plaintiffs' Constitutional Rights and those of people similarly situated." Pls. Opp'n Br. at 26. To determine whether a *Young* exception is appropriate, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ***ongoing*** violation of federal law and seeks relief properly characterized as prospective." *Pa. Fed'n of Sportsmen's Clubs, Inc.*, 297 F.3d at 324 (quoting *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002)) (emphasis added). Setting aside the question of whether Plaintiffs have sufficiently alleged a violation of federal law, Plaintiffs have failed to allege that Defendants' purported violation of federal law is ongoing. *See Iqbal*, 556 U.S. at 678.

Plaintiffs seek an injunction "requiring that the explicit instruction and policy be made requiring [DCPP] workers to refrain from abuse of process." Compl. ¶ 169. However, Plaintiffs' Complaint contains no facts indicating that Defendants are likely to repeat their alleged abuse of process against Plaintiffs or any other individual. Plaintiffs rely heavily on the March 9, 2015 letter

---

[5] Although typically "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n 10 (quoting *Kentucky v. Graham*, 473 U.S., at 167, n 14).

they received from Ms. Marchese and Ms. Dykes on DCPP letterhead, which states that "[DCPP] will not be providing services to your child and your family at this time." Plaintiffs assert that by using the words "at this time," Ms. Marchese and Ms. Dykes threaten to violate Plaintiffs' constitutional rights in the future. However, the plain language of the letter, as read in context, stands for the contrary. The letter clearly states that Defendants have no intention of taking any further action vis-à-vis Plaintiffs.

In addition, Plaintiffs rely on allegations "on information and belief" that "Defendants [DCPP], Lisa Von Pier and Allison Blake, established through tacit authorization or explicit instruction a policy or custom of allowing [DCPP] workers to commit abuse of process . . . . [t]hat policy was enacted and enforced with deliberate indifference to the constitutional rights of Plaintiffs" and that "there is a real and immediate danger that [DCPP] will continue and repeat its Un-Constitutional conduct and cause further and more permanent injury to [Plaintiffs]." Compl.¶¶ 117, 122. However, these are quintessential conclusory statements, and as such "are not entitled to the assumption of truth." *See Iqbal*, 556 U.S. at 679. "Several Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession," *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n 31 (3d Cir. 2015) (citing *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442–43 (7th Cir. 2011); *Medical Assur. Co. v. Hellman*, 610 F.3d 371 (7th Cir. 2010); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)), or where "the belief is based on factual information that makes the inference of culpability plausible." *Arista*, 604 F.3d at 120 (citing *Iqbal*, 129 S.Ct. at 1949); *see also Pirelli*, 631 F.3d at 443 (allegations may be made upon information and belief so long as "(1) the facts constituting the [allegation] are not accessible to the plaintiff and (2) the

plaintiff provides "the grounds for his suspicions"). Here, Plaintiffs have not alleged any grounds for their suspicions regarding Defendants' purported policy, such as a pattern of violating Plaintiffs' rights or the rights of others, or an indication from the DCPP, or any of its employees, that Ms. Marchese's alleged behavior conformed to DCPP policy. Nor have Plaintiffs argued that the facts regarding the DCPP's general policies and customs related to this matter are uniquely within the possession of Defendants. Without any specific allegations indicating that Ms. Von Pier and Ms. Blake's alleged violations are ongoing, Plaintiffs' requested injunctive relief cannot be "designed to end a continuing violation of federal law." *See Christ the King Manor*, 730 F.3d at 319. Therefore, the *Young* exception does not apply.

Further, because the *Young* doctrine only applies to "violations of the United States Constitution and to violations of federal statutes," *MCI*, 271 F.3d at 506, the Court notes that Plaintiffs' claims under the NJCRA, even if they are for prospective injunctive relief, could not, by definition, fall within the scope of *Young*. *See Pa. Fed'n of Sportsmen's Clubs, Inc.*, 297 F.3d at 325 ("Simply put, the Eleventh Amendment prohibits a federal court from considering a claim that a state official violated state law in carrying out his or her official responsibilities."). Because no exception to Ms. Von Pier and Ms. Blake's sovereign immunity applies, the Court lacks subject matter jurisdiction over Plaintiffs' claims under Section 1983, Section 1985, and the NJCRA against these defendants.

In sum, due to Eleventh Amendment sovereign immunity, Plaintiffs' claims against the DCPP, Ms. Von Pier, and Ms. Blake are dismissed.

    *b.   Failure to State a Claim*

      i.   <u>Vicarious Liability of Ms. Dykes under Section 1983</u>

Plaintiffs bring claims against Ms. Dykes under Section 1983 for allegedly depriving Plaintiffs of their First Amendment, Second Amendment, Fourth Amendment, Fifth Amendment and Fourteenth Amendment rights. To bring a claim under Section 1983, a plaintiff must show that, among other things, the defendant "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Moreover, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each [defendant], through [her] own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (citing *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 691 (1978); *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888); *Dunlop v. Munroe*, 11 U.S. 242 (1812)). Here, Plaintiffs allege that Ms. Dykes directly supervised Ms. Marchese during the course of her alleged violations of Plaintiffs' constitutional rights, but have failed to allege that Ms. Dykes herself, through her own individual actions, violated Plaintiffs' rights.

In their Complaint, Plaintiffs allege very limited facts about Ms. Dykes' involvement: in paragraph 6, Plaintiffs describe Ms. Dykes as a "supervisor of child protective services workers"; in paragraph 20, Plaintiffs allege that Ms. Dykes "directly supervised the conduct of Marchese with respect to the investigation by [DCPP] of the Zimmer family"; and in paragraph 105, Plaintiffs allege that Ms. Dykes signed the March 9, 2015 DCPP letter as a "Supervising Family Service Specialist." Compl. ¶¶ 6, 20, 105. In short, the only alleged action taken by Ms. Dykes herself was mailing the March 9 letter to Plaintiffs. Plaintiffs argue that "the sending of [the March 9 letter] to Plaintiffs constitutes action by the Defendant Dykes which is a continuing threat against the Plaintiffs' Constitutional Rights, and therefore actionable under 42 U.S.C. §1985 and §1983." Pls.' Opp'n Br. at 28. However, the Court cannot conceive of how the mere conduct of sending such a

letter could by itself be a sufficient basis to bring a claim against Ms. Dykes for violating Plaintiffs' constitutional rights, particularly where, as noted *supra*, that letter does not constitute a continuing threat. Therefore, all claims against Ms. Dykes under Section 1983 are dismissed.

ii.   Qualified Immunity of Ms. Marchese under Section 1983

Qualified immunity shields state and federal officials from Section 1983 claims for money damages when "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The Supreme Court has established a two-part test for determining whether an official is entitled to a defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). This test asks "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Saucier*, 533 U.S. at 201). District courts may address the two prongs of this test in any order, at their discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In other words, qualified immunity is designed to grant officials "breathing room to make reasonable but mistaken judgments about open legal questions," thereby protecting "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 335 (1986)).

1)   *Fifth Amendment – Due Process*

Plaintiffs allege that Defendants have violated their Fifth Amendment due process rights. However, the due process clause of the Fifth Amendment applies only to the federal government or federal officials, not to the state government or state officials. *Bartkus v. Illinois*, 359 U.S. 121, 124 (1959). Plaintiffs do not allege that the DCPP or its employees are federal agents, nor could they. Therefore, the Fifth Amendment is not implicated in this case and that claim is dismissed.

2) *Fourteenth Amendment – Equal Protection*

Plaintiffs allege that Ms. Marchese violated their Fourteenth Amendment rights to equal protection. The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To prevail on an equal protection claim, a plaintiff must present evidence that he or she has been treated differently from persons who are similarly situated. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Here, Plaintiffs have not alleged that they were treated differently from other persons who are similarly situated. Indeed, the Complaint contains no facts related to the treatment of others who are similarly situated.

Rather, Plaintiffs argue that because Ms. Marchese was allegedly investigating the homeschooling of C.Z., the Court can infer that she was treating parents who homeschool their children differently from parents who send their children away to school. Pls.' Opp'n Br. at 30. However, without any facts demonstrating that parents who do not homeschool their children were treated differently, no plausible reading of the Complaint can make such an inferential leap. Additionally, there are no allegations in the Complaint that Plaintiffs were treated differently by Defendants from other parents who homeschool their children. Indeed, even if Plaintiffs had plead sufficient facts to show a violation of their Fourteenth Amendment rights to equal protection, these rights were not so clearly established at the time of the alleged misconduct that Ms. Marchese would forfeit her qualified immunity. Therefore, Plaintiffs' Fourteenth Amendment equal protection claims against Ms. Marchese are dismissed.

3) *Fourteenth Amendment – Due Process – Familial Integrity*

The Third circuit has recognized "constitutionally protected liberty interests that parents have in the custody, care and management of their children" under the Fourteenth Amendment

Due Process Clause. *Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir.1997) (citing *Lehr v. Robertson*, 463 U.S. 248, 258 (1983)). Plaintiffs assert that their right to familial integrity was violated by Ms. Marchese's investigation.[6] Pls.' Opp'n Br. at 31. The Court notes at the outset, that Defendants have conceded, for the purposes of this motion, that Plaintiffs' Complaint states a Fourth Amendment unreasonable search claim against Ms. Marchese. Therefore, the question presently before the Court, is whether Ms. Marchese's investigation, as alleged, violated Plaintiffs' Fourteenth Amendment right to familial integrity.

Plaintiffs cite to four cases to support their contention that "under the Fourteenth Amendment . . . persons are free from unlawful investigations and removal of children from parents by state agencies, where there is 'no reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse.'" Pls.' Opp'n Br. at 31 (citing *Croft*, 103 F.3d at 1125; *Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir. 1999); *Doe v. Heck*, 327 F.3d 492, 520-25 (7th Cir. 2003), *as amended on denial of reh'g* (May 15, 2003); *Weaver v. Marling*, Civ. No. 12-1777, 2013 WL 4040472 (W.D. Pa. Aug. 8, 2013)). However, although Plaintiffs correctly provide the standard to determine whether a child has been removed from the custody of his parents, in violation of the parent's right to family integrity, *see*

---

[6] Defendants also argue that their right to familial integrity was violated because Ms. Marchese's investigation was conducted "under threat of penalties from the [DCPP], which include the purported power to remove children." Pls.' Opp'n Br. at 32; *see Croft*, 103 F.3d at 1126 n 4 (finding that state agent's ultimatum to father that child would be removed from home immediately and placed in foster care unless he left his home and had no contact with child impermissibly interfered with parents' constitutional right to familial integrity). However, nowhere in the Complaint do Plaintiffs allege that Ms. Marchese threatened, or even mentioned, removal of C.Z. from Plaintiffs' custody. The mere fact that an individual is employed by the DCPP, which has the power to remove children from the custody of their parents under certain circumstances, does not, as Plaintiffs' argue, in and of itself constitute a threat that individuals who do not fully cooperate with the DCPP will lose custody of their children.

*Croft*, 103 F.3d at 1126, they mistakenly apply this standard to investigations of child abuse. Indeed, "[t]he right to familial integrity . . . does not include a right to remain free from child abuse investigations." *Id.* at 1125 (citing *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993). All four cases cited by Plaintiffs involve the analysis of whether state actors had sufficient evidence to remove children from the custody of their parents, not merely investigate whether abuse has occurred. *See Croft*, 103 F.3d at 1126 n 4 (involving removal of father from familial home and preventing his contact with his child under threat of removing child from father's custody); *Miller*, 174 F.3d 368 (involving *ex parte* child custody hearing that resulted in removal of children from mother's custody); *Heck*, 327 F.3d at 520-25 (involving removal of child from guardians' custody to conduct interview, threatening to remove child from parental custody, and "targeting plaintiff parents as child abusers"); *Weaver*, 2013 WL 4040472, at *5 (involving removal of child from parental custody and threatening to removal other children from parental custody).

Here, Plaintiffs have not alleged that Defendants, at any point, removed or even threatened to remove C.Z. from Plaintiffs' custody. Standing alone, allegations that Ms. Marchese arbitrarily investigated Plaintiffs arguably falls under the purview of the Fourth Amendment, but they do not state a claim under the Fourteenth Amendment right to familial integrity. *See Croft*, 103 F.3d at 1125; *Watterson*, 987 F.2d at 8. Therefore, Plaintiffs' Fourteenth Amendment familial integrity claims against Ms. Marchese are dismissed.

### 4) *First Amendment*

Plaintiffs claim that Ms. Marchese violated their First Amendment rights by unconstitutionally investigating Plaintiffs in retaliation for homeschooling their child and legally possessing firearms. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person

of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). "The key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (citations and quotations omitted).

Plaintiffs have cited no law that supports their novel assertion that the act of homeschooling their child or the act of possessing a firearm is constitutionally protected speech under the First Amendment. *See Wilson v. Unknown Budgeon*, 248 F. App'x 348, 350 (3d Cir. 2007) (relief unavailable where conduct not protected by First Amendment). Plaintiffs appear to argue that based on the Supreme Court's ruling in *Wisconsin v. Yoder*, 406 U.S. 205 (1972), their right to homeschool their child springs from their First Amendment right to free exercise of religion, and is therefore protected speech. *See* Pls.' Opp'n Br. at 38. Aside from the fact that Plaintiffs conflate freedom of speech and free exercise of religion, *Yoder* is not applicable here, because Plaintiffs do not allege that they are homeschooling C.Z. for religious reasons. *See Yoder*, 406 U.S. at 234 (finding that the First and Fourteenth Amendments prevent the state from compelling Amish parents to cause their children, who have graduated from the eighth grade, to attend formal high school to age 16, where parents believe that high school attendance is contrary to the Amish religion and way of life and that they would endanger their own salvation and that of their children by complying with the law).

Moreover, regardless of whether the act of homeschooling a child or possessing firearms is protected speech, Plaintiffs have not pled facts demonstrating a causal link between this conduct

and Ms. Marchese's investigation. Indeed, under the facts alleged by Plaintiffs, Ms. Marchese conducted her investigation to determine whether C.Z. was "getting the 'proper homeschooling.'" Compl. ¶ 24. However, inconsistently, Plaintiffs' First Amendment retaliation claims rest solely upon Plaintiffs' conclusory allegation that "Defendants' Un-Constitutional conduct was done solely to deprive the Plaintiffs of their rights under the First, Second and Fourteenth Amendments." Compl. ¶ 149. That conclusory allegation is insufficient; Plaintiffs have failed to state a claim under the First Amendment. Consequently, Plaintiffs' retaliation claims against Ms. Marchese are dismissed.

     5) *Second Amendment*

The Second Amendment provides that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," regardless of service in a militia. 554 U.S. 570, 592, 595 (2008). In *McDonald v. City of Chicago*, this right was incorporated and made applicable to the States through the Fourteenth Amendment. 561 U.S. 742, 778 (2010). To determine whether a government act contravenes the Second Amendment, the Third Circuit applies a two prong test:

> First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.

*United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) (citing *United States v. Stevens*, 533 F.3d 218, 233 (3d Cir. 2008), *aff'd* 130 S.Ct. 1577).

Plaintiffs allege that Ms. Marchese violated their Second Amendment rights by asking Plaintiffs if they kept weapons in the house, asking who kept the keys to Plaintiffs' gun safe, "demanding to see the firearms," asking where Plaintiffs kept their ammunition, and confirming that the gun safe was locked. Compl. ¶¶ 82-95. Importantly, Plaintiffs do not allege in any way that Ms. Marchese threatened to confiscate Plaintiffs' firearms, or remove C.Z. from Plaintiffs' custody if Plaintiffs did not show her their firearms or if Plaintiffs' firearm safety practices were not to her satisfaction. Indeed, the Court finds that Ms. Marchese's alleged actions do not impose a burden on conduct protected by the Second Amendment. Simply put, merely asking questions about Plaintiffs' gun ownership and gun safety practices, or inspecting Plaintiffs' firearms and gun safe, did not burden Plaintiffs' rights to possess and carry firearms. *See Rearick v. Wiedemer, No. 4:11-CV-624, 2012 WL 3231096, at *3 (M.D. Pa. Aug. 6, 2012)* (finding that state employer did not burden employee's Second Amendment rights by questioning her about her conceal and carry gun permit). Therefore, the Second Amendment claims against Ms. Marchese are dismissed.

iii.   <u>Section 1985 Claims against Ms. Dykes and Ms. Marchese</u>

Defendants argue that Plaintiffs have failed to state a claim under Section 1985. Count Two, entitled "42 U.S.C.A. § 1985 - Conspiracy to Violate Civil Rights," alleges that Defendants violated Section 1985 when they "reached a meeting of the minds amongst themselves that incidents of abuse of process would be tolerated notwithstanding the constitutional implications of such abuse and the likelihood such conduct would be repeated." Compl. ¶ 127. Count Two includes further allegations that a conspiracy among Defendants is evident through "Defendants incidents of abuse of process and from the repeating of that conduct in an effort to deny Plaintiffs rights of due process." Compl. ¶ 128.

The Court notes at the outset that "no abuse of process claim exists under Section 1985." *Mammaro v. Omega Lab., Inc.*, Civ. No. 13-6483, 2014 WL 4854602, at *5 (D.N.J. Sept. 30, 2014) (citing 42 USC § 1985; *Marable v. W. Pottsgrove Twp.*, 176 Fed. Appx. 275, 281-282 (3d Cir.2006); *Natale v. Schwartz,* Civ. No. 98-3298, 1999 WL 1134535, at *9 (E.D. Pa. Dec. 10, 1999) (finding that abuse of process is a state law claim and that "[g]enerally, § 1985 creates a cause of action not for conspiracies to commit state law torts but for conspiracies to violate particular civil rights")). Consequently, the Court construes Plaintiffs' claims of conspiracy to commit abuse of process as a *de facto* claim of conspiracy to obstruct justice through abuse of process under § 1985(2). *See Davis v. Township of Hillside,* 190 F.3d 167, 171 (3d Cir.1999); *Omega Lab., Inc.*, 2014 WL 4854602, at *5 (citing *Natale,* 1999 WL 1134535, at *9).

Section 1985(2) provides:

> if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . .

42 USC § 1985(2); *Davis*, 190 F.3d at 171 (finding the second provision of Section 1985 was most pertinent when two police officers filed "false or misleading statements to investigators about their conduct ... to hide their culpable conduct"). The Third Circuit requires Section 1985(2) claims for conspiracy to "include allegations that the conspiracy was motivated by racial or class-based discriminatory animus."[7] *Natale,* 1999 WL 1134535, at *9; *Davis*, 190 F.3d at 171 ("Because

---

[7] Additionally, to the extent Plaintiffs assert a Section 1985 claim under the broader scope of subsection (3), which involves depriving persons of equal protection of the laws, *see* 42 USC § 1985(3), Plaintiffs must also allege that the conspirators' actions were motivated by racial or class-based discriminatory animus. *See Rogin Bensalem Township*, 616 F.2d 680, 696 (3d. Cir. 1980).

plaintiff does not allege that the officers colluded with the requisite "'racial, or . . . otherwise class-based, invidiously discriminatory animus,' . . . the district court correctly dismissed this claim.") (citations omitted); *see Kush v. Rutledge*, 460 U.S. 719, 725 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). As discussed *supra,* Plaintiffs have not alleged that they belong to a protected class, or that Defendants discriminated against them because of their protected class membership. As this is a fundamental aspect of a Section 1985 claim, Plaintiffs have failed to properly state a claim. Even more problematic, Plaintiffs allegations of conspiracy are entirely conclusory. Thus, Plaintiffs' claim for abuse of process in violation of Section 1985 is dismissed.

      iv.    <u>The NJCRA Claims against Ms. Dykes and Ms. Marchese</u>

The NJCRA creates a private cause of action for the violation of rights secured both under the U.S. Constitution and the New Jersey Constitution. *Owens v. Feigin*, 947 A.2d 653, 655 (N.J. 2008) (the New Jersey legislature adopted the NJCRA "for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights and to fill any gaps in state statutory anti-discrimination protection"). As discussed *supra*, the NJCRA was modeled after Section 1983, and thus courts in New Jersey have consistently looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443-44 (D.N.J. 2011); *see also Stroby*, 754 F. Supp. 2d at 721 ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983." (quoting *Chapman*, 2009 WL 2634888, at *3)). Because Plaintiffs have not adequately alleged that Ms. Dykes violated any of their federal constitutional rights under Section 1983, they have similarly failed to adequately allege violations of these rights under the NJCRA. Likewise, because Plaintiffs have not adequately alleged that Ms. Marchese violated any of their federal constitutional rights under

Section 1983, except their Fourth Amendment rights,[8] they have failed to adequately allege violations of these rights under the NJCRA. Additionally, Plaintiffs have not specified which of their rights under the New Jersey Constitution, if any, Defendants have violated. Therefore, Plaintiffs NJCRA claim is dismissed, except as it pertains to any federal Fourth Amendment claims against Ms. Marchese.

## IV.    Conclusion

Defendants' motion to dismiss is granted in part and denied in part. All claims for both damages and injunctive relief against the DCPP, Ms. Von Pier, and Ms. Blake are barred by Eleventh Amendment sovereign immunity and dismissed for lack of subject matter jurisdiction. All other claims are dismissed for failure to state a claim, except the Section 1983 and NJCRA Fourth Amendment claims against Ms. Marchese in Counts Four and Six.

Date: January 20, 2016

_/s/ Freda L. Wolfson_
Freda L. Wolfson
U.S. District Judge

---

[8] As discussed *supra* Defendants concede that Plaintiffs state a claim in Count Four against Ms. Marchese under Section 1983 for unreasonable search in violation of Plaintiffs' Fourth Amendment rights. Because stating a claim under Section 1983 necessarily means stating a claim under the NJCRA, and Defendants did not address the interplay of the NJCRA and the Fourth Amendment in their brief, Defendants have also *de facto* conceded that Plaintiffs state a claim in Count Six against Ms. Marchese for violation of the Fourth Amendment under the NJCRA.